## Graham v. Louisville & Nashville Railroad Company.

(Decided January 20, 1914.)

### Appeal from Green Circuit Court.

Personal Injuries—Failure of Proof.—In an action to recover damages for personal injuries, the plaintiff must show, before he can recover, that the injuries were due to the negligence of the defendant, or to a breach of duty committed by him.

NOGGLE & GRAHAM and JEFF HENRY for appellant.

W. F. CANTRELL, WILLIAM C. McCHORD, CHAS. H. MOORMAN and BENJ. D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming

The appellant was a brakeman on one of appellee's freight trains, and in uncoupling a car lost his right hand, and following the injury, as a result of it, his right arm. To recover damages for the injuries sustained, he brought this suit.

On the trial of the case, the appellant was the only witness introduced, and upon the conclusion of his evidence, which closed the case in his behalf, the trial court directed a verdict for the railroad company, and this appeal involves the correctness of that ruling of the court.

The evidence shows that appellant, at the time he received the injuries complained of, had been working as a freight brakeman for about six months. Putting so much of his evidence as seems necessary to an understanding of the case in narrative form, it is substantially as follows: He was the head brakeman on a freight train running from Lebanon Junction to Corbin, Ky., and the train, which consisted of an engine and about thirty empty coal cars, arrived at Mt. Vernon about four o'clock a. m. When the train had run about a half a mile south of Mt. Vernon, it broke in two, and the appellant signaled the engineer to stop, which he did, and then backed that part of the train attached to the engine to the point where the rear end of the train had stopped when it separated from the front end. Appellant coupled the train together, and in making the coupling he discovered that the draw head in the car that he had coupled was broken, and asked the conductor what to do about it. The conductor told him "to break up to Mt. Ver-

non over the south switch, and if that extra engine wanted to come out, to let it out first and if not to go back and cut the car off and back up on the passing track and set the car on the house track. In the meantime he caught the engineer himself and told him what the trouble was. As we got to Mt. Vernon over the south switch I got off first and he followed me, and he says, 'You go back behind that car and cut that car off. Go and turn the angle cock with your hand and break the hose, and give him the signal,' which I did. He says, 'When you give him the signal, jump in between the cars and jerk up the angle cock on the rear cut of the cars. That will hold until you can set that car off.' I went on back and he followed me. He was behind me. I uncoupled them and cut them in two, and give him the signal. The front was supposed to be gone. I stepped in between the cars, as he told me, and opened the angle cock on the rear cut, and just as I let my arm reach over to turn the angle cock, it caught right between the couplings. Just as I give him the signal to go ahead, it caught my arm.

"The rear car did not run up on me; when I gave the signal I was standing outside of the cars. I jerked the coupling pin up with my hand; that is the lever outside the cars. You can uncouple them that way—and gave him the signal and he moved on off. When I turned the angle cock, that cut the air out behind and in front, and when I broke the hose with my hand, that let the engineer know that it was cut off, and he did not have no more control of the air behind, but he could handle the front of the train from the engine.

"The engineer was about four hundred yards from me and the conductor about thirty. The rear car could not have moved without running over me. I don't know how far the front of the train had gotten from me when I was hurt, but it could not have been but a little ways. I think the front came back on me."

Stating his cross-examination in narrative form, he said that it was part of his duty to couple and uncouple cars, and that he frequently made couplings and was familiar with the couplers on the cars; that all of the cars were coal cars and were equipped with air brakes and hand brakes; that at the time he was hurt the train was standing on a heavy down grade and the draw head was broken on the front end of the car that he uncoupled.

He said he knew what his duties were after the conductor had told him to cut the car off; that he knew how to operate the brakes and that it was not necessary to set the car brakes in order to hold the rear part of the train from going down the grade when it was cut in two, and the front part of the train had moved. "The train was standing perfectly still when I cut them in two and I thought I had a chance to set the air brakes before they rolled." He said he did not think it would have been safer to have set all the hand brakes before he made the uncoupling and that he undertook to set the air brakes after he had uncoupled the car. He did not think, after the uncoupling was made, that the front part of the train had moved over a foot. When there was about a foot space between the couplers, he reached his hand over between the bumpers and undertook to open the angle cock. He says, "My face was turned toward the rear end of the train when I was hurt."

From this evidence it will be seen that it is not very clear just how the accident happened, except that the bumpers on the cars, after they were cut in two, came together and caught appellant's hand. At the time he was caught, the cars were very close together, not over a foot apart, and, although appellant says that the rear end of the train did not move up on him, it is very plain that either the front or the rear end or both must have moved a few inches or else his hand could not have been caught. He does not say that the engineer made any backward movement of the train after he had the signal to go forward, nor does he make any statement from which it can be reasonably inferred that the engineer was guilty of any negligence. It is likewise manifest from his testimony that the conductor was not guilty of any negligence, and that the appellant was an experienced brakeman and understood how to couple and uncouple cars is admitted.

The trouble with appellant's case is that it does not show any negligence in the operation of the train, and there being no claim that the accident was due to defective appliances, our opinion is, after carefully reading and considering the whole of appellant's evidence, that the unfortunate acident was due to some thoughtless or careless act on his part that is not fully developed by the evidence.

And the view that the accident was due to negligence or thoughtlessness on the part of appellant, is much strengthened by these questions and answers that appear in his evidence: "Q. What was to prevent the front end of the train from rolling, if you did not put on the brakes? A. The train was perfectly at a standstill when I cut it in two and I thought I had a chance to set the air brakes before they rolled. Q. And you took that chance? A. Certainly. Q. You undertook to set the air brakes after you had uncoupled the cars? A. Yes, sir." Question by the court: "When you expected to uncouple or undertook to uncouple these cars, did you do the uncoupling first or did you set the air brakes first? A. I uncoupled the cars first." By the court: "Could you have gone in and set the air brakes and then come out from between the cars and from that position uncoupled the cars without going back in there? A. Well, yes; I could, but it would have been a whole lot of trouble; you would have to reach anyway for to get to the angle cock. A man will generally step in and turn the angle cock instead of reaching in and turning it from the outside." By the court: "After you set the air brakes, could you have come out and uncoupled those cars and been in a position where you could not have been hurt in between the cars? A. Yes, sir." The further fact appears that under the rules of the company it was the duty of the appellant to first set the air brakes and then set the hand brakes and then to uncouple the cars after the brakes were set.

We think the lower court properly directed a verdict, and the judgment is affirmed.